# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATORS LLC, et al.,<br><br>Defendants,<br><br>PEREGRINE WORLDWIDE, LLC,<br><br>Relief Defendant. | Case No. 23-cv-1444-DMS-BGS<br><br>**STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT** |

This matter comes before the Court upon the stipulation of the Plaintiff (the Federal Trade Commission ("Commission" or "FTC")); Automators LLC, also d/b/a Automators AI and Ecom Skool; Empire Ecommerce LLC; Onyx Distribution LLC; Stryder Holdings LLC; Pelenea Ventures LLC; Roman Cresto; John Cresto; and Andrew Chapman (collectively, "Defendants"); and Peregrine Worldwide, LLC ("Relief Defendant") for the entry of an order for permanent injunction and monetary judgment as to Defendants and Relief Defendant.

WHEREAS, on August 8, 2023, Plaintiff, the FTC, filed its Complaint for Permanent Injunction, Monetary Relief, and Other Relief under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b, the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule"), 16 C.F.R. Part 437, as amended, the Consumer Review Fairness Act of 2016 ("CRFA"), 15 U.S.C. § 45b (Docket No. 1), and moved, under Fed. R. Civ. P. 65(b), for a temporary restraining order, asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants and Relief Defendant (Docket No. 5-1).

WHEREAS, on August 11, 2023, the Court issued an *ex parte* Temporary Restraining Order against Defendants and Relief Defendant that includes an asset freeze, appointment of a temporary receiver over the Receivership Entities (as defined below), and other equitable relief (Docket No. 8).

WHEREAS, each of the Defendants has been properly served with a summons, the Complaint and the Temporary Restraining Order.

WHEREAS, on September 8, 2023, the Court issued a Stipulated Preliminary Injunction Order against Defendants and Relief Defendants that continued, *inter alia*, the asset freeze over the Defendants and appointed a receiver over the Receivership Entities (Docket No. 48).

WHEREAS, Plaintiff, Defendants, and Relief Defendant stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS STIPULATED AND ORDERED** as follows:

## <u>FINDINGS OF FACT</u>

A.      This Court has jurisdiction over this matter.

B.      The FTC alleges that Defendants have engaged in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the Business Opportunity Rule, and the CRFA.

C.      Defendants and Relief Defendant neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants and Relief Defendant admit the facts necessary to establish jurisdiction.

D.      Defendants and Relief Defendant waive and release any claims that they may have against the Commission and the Receiver, including against any agent of the Commission or the Receiver, that relate to this action. The parties agree that this Order resolves all allegations in the Complaint.

E.     Defendants and Relief Defendant waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## **DEFINITIONS**

For the purpose of this Order, the following definitions shall apply:

A.     "**Asset**" means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

B.     "**Assisting Others**" includes the following:

1. performing customer service functions, including receiving or responding to consumer complaints;

2. formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

3. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

4. providing names of, or assisting in the generation of, potential customers;

5. performing marketing, billing, payment processing, or payment services of any kind; or

6. acting or serving as an owner, officer, director, manager, or principal of any entity.

C.     "**Business Coaching Program**" means any program, plan, good, or service, including those related to business opportunities, that represents, expressly or by implication, to coach, train or teach a participant or Purchaser how to establish, operate, or improve the Purchaser's business.

D.     "**Business Opportunity**" means a commercial arrangement in which:

1. A Seller solicits a prospective Purchaser to enter into a new business; and

2. The prospective Purchaser makes a required payment; and

3. The Seller, expressly or by implication, orally or in writing, represents that the Seller or one or more Designated Persons will:

(i) Provide locations for the use or operation of equipment, displays, vending machines, or similar devices, owned, leased, controlled, or paid for by the Purchaser; or

(ii) Provide outlets, accounts, or customers, including Internet outlets, accounts, or customers, for the Purchaser's goods or services; or

(iii) Buy back any or all of the goods or services that the Purchaser makes, produces, fabricates, grows, breeds, modifies, or provides, including providing payment for such services as, for example, stuffing envelopes from the Purchaser's home.

E. "**Corporate Defendants**" means Automators LLC, also d/b/a Automators AI and Ecom Skool; Empire Ecommerce LLC; Onyx Distribution LLC; Stryder Holdings LLC; Pelenea Ventures LLC, and each of their subsidiaries, affiliates, successors, and assigns.

F. "**Covered communication**" means a written, oral, or pictorial review, performance assessment, or other similar analysis, including by electronic means, of goods, services, or conduct.

G. "**Defendants**" means the Corporate Defendants and the Individual Defendants, individually, collectively, or in any combination.

H. "**Defendants' Products**" means products and services offered by Defendants, including Defendants' own products and services, and products and services of third parties for whom Defendants advertise.

I. "**Designated Person**" means any Person, other than the Seller, whose goods or services the Seller suggests, recommends, or requires that the Purchaser use in establishing or operating a new business.

J. "**Document**" is synonymous in meaning and equal in scope to the usage of

"document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate Document within the meaning of the term.

K.     "**Earnings Claim(s)**" means any oral, written, or visual representation to a consumer, prospective purchaser, or investor that conveys, expressly or by implication, a specific level or range of actual or potential sales, or gross or net income or profits, revenues, financial gains, percentage gains, or return on investment. Earnings Claims include, but are not limited to: (1) any chart, table, or mathematical calculation that demonstrates possible results based upon a combination of variables; (2) any statements from which a consumer, prospective purchaser, or investor can reasonably infer that he or she will earn a minimum level of income (e.g., "earn enough money to buy a Porsche," "earn a six-figure income, or "earn your investment back within one year"); (3) references to quitting one's job, not having to work, or living off income from online sales; (4) references to increased purchases or savings, including a home, cars, boats, vacations, or travel; (5) any statements, claims, success stories, endorsements, or testimonials about the performance or profitability of representatives, endorsers, instructors or customers; and (6) any representation, even hypothetical, of how much money a consumer could or would earn.

L.     "**General Media**" means all print, electronic, internet, social networking,

radio and other media outlets.

M.   "**Individual Defendant(s)**" means Roman Cresto, John Cresto, and Andrew Chapman, individually, collectively, or in any combination.

N.   "**Online Marketplace**" means any Person or entity that operates a consumer-directed electronically based or accessed platform that-

1. includes features that allow for, facilitate, or enable third party sellers to engage in the sale, purchase, payment, storage, shipping, or delivery of a consumer product in the United States;
2. is used by one or more third party sellers for such purposes; and
3. has a contractual or similar relationship with consumers governing their use of the platform to purchase consumer products.

O.   "**Person**" means any natural Person or any entity, corporation, partnership, or association of Persons.

P.   "**Pictorial**" includes pictures, photographs, video, illustrations, and symbols.

Q.   "**Prohibited contract provision**" means a standard contract provision used in the course of selling or leasing goods or services that:

1. prohibits or restricts the ability of a Person who is a party to the contract to engage in a covered communication;
2. imposes a penalty or fee against a Person who is a party to the contract for engaging in a covered communication; or
3. transfers, or requires a Person who is a party to the contract to transfer, to any other Person any intellectual property rights in a covered communication, with the exception of a non-exclusive license to lawfully use a covered communication about a Defendant's goods, services, or conduct.

R.   "**Providing locations, outlets, accounts, or customers**" means furnishing the prospective Purchaser with existing or potential locations, outlets, accounts, or customers; requiring, recommending, or suggesting one or more locators or lead

generating companies; providing a list of locator or lead generating companies; collecting a fee on behalf of one or more locators or lead generating companies; offering to furnish a list of locations; or otherwise assisting the prospective Purchaser in obtaining his or her own locations, outlets, accounts, or customers.

S.    **"Purchaser"** means a Person who buys a Business Opportunity or Business Coaching Program.

T.    "**Receiver**" means the Stapleton Group, Inc., the receiver appointed in Section XI of the September 8, 2023 Order Granting Joint Motion to Enter Stipulated Preliminary Injunction and Vacating Preliminary Injunction Hearing (Docket No. 48) and any deputy receivers that shall be named by the Stapleton Group, Inc.

U.    "**Receivership Entities**" means Corporate Defendants and Relief Defendant, as well as any other entity that has conducted any business related to the marketing or sale of Defendants' Products, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

V.    "**Relief Defendant**" means Peregrine Worldwide, LLC and each of its subsidiaries, affiliates, and assigns.

W.    **"Receivership Estate"** means the Assets identified in Section IV.B.1-3 of this Order and all Assets of the Receivership Entities, including: (a) any Assets of the Receivership Entities currently in the possession of the Receiver; (b) all the funds, property, premises, accounts, Documents, mail, and all other Assets of, or in the possession or under the control of the Receivership Entities, wherever situated, the income and profits therefrom, all sums of money now or hereafter due or owing to the Receivership Entities, and any other Assets or property belonging or owed to the Receivership Entities; (c) any Assets of the Receivership Entities held in asset protection trusts; (d) any reserve funds or other accounts associated with any payments processed on behalf of any Receivership Entities, including such reserve funds held by a payment processor, credit card processor, or bank; and (e) all proceeds from the sale of such

7

Assets, except those Assets the sale of which the Receiver determines will not add appreciably to the value of the estate.

X.    **"Seller"** means a Person who offers for sale or sells a Business Opportunity or Business Coaching Program.

## ORDER

## I.    BAN ON SELLING AND MARKETING OF CERTAIN BUSINESS OPPORTUNITIES AND BUSINESS COACHING

### (As to Defendants Automators LLC, Empire Ecommerce LLC, Onyx Distribution LLC, Stryder Holdings LLC, Roman Cresto, and John Cresto)

IT IS THEREFORE ORDERED that Defendants Automators LLC, also d/b/a Automators AI and Ecom Skool, Empire Ecommerce LLC, Onyx Distribution LLC, Stryder Holdings LLC, Roman Cresto, and John Cresto are permanently restrained and enjoined from advertising, marketing, distributing, promoting, or offering for sale, or Assisting Others in the advertising, marketing, distributing, promoting, or offering for sale of, any Business Opportunity involving the management or operation of e-commerce stores in an Online Marketplace or any Business Coaching Program regarding how to manage or operate e-commerce stores in an Online Marketplace.

## II.    PROHIBITED BUSINESS ACTIVITIES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, affiliate marketers, employees, and attorneys, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any goods or services, are permanently restrained and enjoined from:

A.    Making any Earnings Claims or Assisting Others in making any Earnings Claims, unless the Earnings Claim is non-misleading, and, at the time the Earnings Claims are made, Defendants (1) have a reasonable basis for the claim; (2) have in their possession written materials that substantiate the claimed earnings and that the claimed

earnings are typical for consumers similarly situated to those to whom the claim is made; and (3) make the written substantiation for Earnings Claims available upon request to the consumer, potential purchaser or investor, and the FTC;

B.    Failing to disclose, or failing to disclose adequately in writing, material information pertaining to any Business Coaching Program or Business Opportunity at least seven (7) days before the consumer signs a contract or makes a payment in connection with that Business Coaching Program or Business Opportunity including:

1.  Basic identifying information of the Seller, including the Seller's name, business address, and telephone number;

2.  Any civil or criminal actions against the Seller or affiliates of the Seller for misrepresentation, fraud, or unfair or deceptive acts or practices within the 10 years preceding the date that the Business Coaching Program or Business Opportunity is offered;

3.  Material terms and conditions of any cancellation or refund policy; or

4.  A list of Purchasers and contact information of individuals who purchased the Business Coaching Program or Business Opportunity within the last 3 years.

C.    Making any Earnings Claims in the General Media or Assisting Others in making any Earnings Claims in the General Media unless Defendants (1) have a reasonable basis for and (2) written substantiation of any Earnings Claims and (3) state in immediate conjunction with the claim the beginning and ending dates when the represented earnings were achieved, and the number and percentage of all Persons who purchased Defendants' Business Coaching Program or Business Opportunity prior to that ending date who achieved at least the stated level of earnings.

D.    Disseminating or Assisting Others in disseminating industry financial, earnings, or performance information in connection with the offering for sale, sale, or promotion of a Business Coaching Program or Business Opportunity while lacking written substantiation demonstrating that the information reflects, or does not exceed, the

1  typical or ordinary financial earnings, or performance experience, of purchasers of the
2  Business Coaching Program or Business Opportunity being offered for sale.

3     E.     Misrepresenting or Assisting Others in misrepresenting, expressly or by
4  implication, that Defendants' Products:

5        1.  will allow purchasers to earn a specific level or range of actual or potential
6        sales, or gross or net income or profits, revenues, financial gains, percentage gains,
7        or return on investment with little to no effort on their part; and

8        2.  will use Artificial Intelligence (AI) machine-learning to maximize revenues
9        or otherwise enhance the profitability or effectiveness of the good or service;

10     F.     Making or Assisting Others in making false or unsubstantiated testimonials
11  about Defendants, Defendants' Products, or companies advertised by Defendants, or
12  failing to disclose that positive reviews of, and testimonials about, Defendants,
13  Defendants' Products, or companies advertised by Defendants, were made by Corporate
14  Defendants' owners, officers, employees, affiliate marketers or agents;

15     G.     Misrepresenting or Assisting Others in misrepresenting, expressly or by
16  implication, any other material fact concerning Defendants' Products, such as: the total
17  costs; the amount of time necessary to achieve the represented results; any material
18  restrictions, limitations, or conditions; any material aspect of its performance, efficacy,
19  nature, or central characteristics; or any material aspect of the nature or terms of the
20  refund, cancellation, exchange, repurchase, or remedy policies; and

21     H.     Prohibiting or restricting any consumer, potential purchaser, or investor from
22  communicating reviews, performance assessments, and similar analyses about
23  Defendants' Products or the conduct of Defendants or companies advertised by
24  Defendants related thereto; or imposing a penalty or fee against any consumer, potential
25  purchaser, or investor who engages in such communications. If otherwise compliant with
26  this Order, a request, made after resolution of a customer's issue, that the customer post
27  additional truthful information to update a review or comment would not comprise
28  prohibition or restriction of that prior review or comment.

Nothing in this Section shall require a Defendant to publish or host the content of any Person.

## III.   INJUNCTION AGAINST SUPPRESSING COVERED COMMUNICATIONS THROUGH PROHIBITED CONTRACT PROVISIONS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from offering, attempting to enforce, or asserting the validity of, any Prohibited contract provision.  Nothing in this Section shall affect any other legal duty of a party to a contract or affect any cause of action arising from the breach of such duty.

## IV.   MONETARY JUDGMENT AND PARTIAL SUSPENSION

IT IS FURTHER ORDERED that:

A.     Judgment in the amount of Twenty-One Million Seven Hundred and Sixty-Five Thousand Nine Hundred and Two Dollars and Sixty-Five Cents ($21,765,902.65) is entered in favor of the Commission against Defendants and Relief Defendant, jointly and severally, as equitable monetary relief.

B.     Immediately upon entry of this Order, Defendants and Relief Defendant are ordered to surrender to Receiver all control, title, dominion, and interest each has to the following Assets:

1.   All interest the Defendants and Relief Defendant have in funds in any accounts in the name of the Receivership Entities;

2.   All cash held by the Receiver;

3.   All Assets owned by the Receivership Entities, including any real, personal, or intellectual property, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail, or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables, insurance policies, lines of credit,

1  cash, trusts (including asset protection trusts), lists of consumer names

2  and reserve funds or any other accounts associated with any payments

3  processed by, or on behalf of, any Corporate Defendants;

4      C.  Immediately upon entry of this Order, Defendants and Relief Defendant are

5 ordered to surrender to the Commission all control, title, dominion, and interest each has

6 to the following Assets:

7      1.  All funds held by Wells Fargo Bank, N.A. in the name of:

8         a.  Roman Cresto, including the account ending in

9           1805 and 6356;

10        b.  John Cresto, including the account ending in 9093;

11        c.  Andrew Chapman, including the accounts ending

12          in 2167 and 2182;

13      2.  All funds held by Charles Schwab & Co. Inc. in the name of Andrew

14      Chapman, including the accounts ending 9680 and 9877;

15      3.  All funds held by Fidelity Investments in the name of John Cresto,

16      including the account ending in 2662;

17      4.  All funds held by Putnam Investments in the name of John Cresto,

18      including the account ending in 3638;

19      5.  All funds held by American Express in the name of Andrew

20      Chapman, including the account ending in 9425;

21      6.  All funds held by CashApp in the name of Roman Cresto;

22      7.  All funds held by Venmo in the name of John Cresto;

23      8.  All funds held by cryptocurrency and trading platforms in the name of

24      Roman Cresto, including Coinbase, Coinbase Wallet, KuCoin,

25      Binance, Uphold, Metamask, Bovada, and Rollbit;

26      9.  All funds held by cryptocurrency and trading platforms in the name of

27      John Cresto, including KuCoin, Metamask, Binance, and Bitrex

28      Incorp;

The payments and transfers ordered in this subsection must be made by electronic fund transfer in accordance with instructions to be provided by a representative of the Commission.

D.     To the extent they are not already in the possession of the Receiver, Defendants and Relief Defendant shall deliver the Assets identified in Subsection B above to the Receiver's possession within 7 days of the entry of this Order. Defendants and Relief Defendant shall cooperate fully with the Receiver and take such steps as the Receiver may require in Receiver's sole and absolute opinion and judgment, including executing any Documents and providing any necessary information, to cause the transfer to the Receivership Estate of legal and equitable title to the property and Assets identified in Subsection B above.

E.     Except for the lists of consumer names and customer information identified in Section VI below, the Receiver shall, as soon as practicable, commence the sale of the unliquidated Assets identified in Subsection B above and surrendered pursuant to this Order using a commercially reasonable procedure. The Receiver shall hold the surrendered Assets, and the proceeds from the sale of the unliquidated Assets, for future transfer in accordance with further instructions from the Court.

F.     Upon the completion of all payments and transfers specified in Subsections B, C, and D, above, the remainder of the judgment is suspended, subject to Subsections G-N below.

G.     The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' and Relief Defendant's sworn financial statements and related Documents (collectively, "financial representations") submitted to the Commission, namely:

1.     the Financial Statement of Individual Defendant Roman Cresto signed on August 31, 2023, including the attachments;

2.     the Financial Statement of Individual Defendant John Cresto signed on September 1, 2023, including the attachments;

3.    the Financial Statement of Individual Defendant Andrew Chapman signed on August 25, 2023, including the attachments;

4.    the Financial Statement of Corporate Defendant Automators LLC, also d/b/a Automators AI and Ecom Skool, signed by Roman Cresto, Owner, on September 1, 2023, including the attachments;

5.    the Financial Statement of Corporate Defendant Stryder Holdings LLC, signed by Roman Cresto, Member, on September 1, 2023, including the attachments;

6.    the Financial Statement of Corporate Defendant Pelenea Ventures LLC, signed by Andrew Chapman, former Owner, on August 25, 2023, including the attachments;

7.    the Financial Statement of Relief Defendant Peregrine Worldwide, LLC, signed by Andrew Chapman, Owner, on August 25, 2023, including the attachments;

8.    the Financial Statement of Wize Mate LLC, signed by Andrew Chapman, Owner, on September 18, 2023;

9.    the revised Financial Statement of Individual Defendant Roman Cresto, signed on October 2, 2023, including the attachments;

10.    the additional information submitted by emails from Defendants' counsel Hannah Friedman and Douglas Litvack to Commission counsel Colleen Robbins, Christopher Brown, and Frances Kern dated September 29, 2023;

11.    the additional information submitted by email from Defendants' counsel Douglas Litvack to Commission counsel Colleen Robbins, Christopher Brown, and Frances Kern dated October 13, 2023;

12.    the additional information and documentation submitted by email from Defendants' counsel Hannah Friedman to Commission counsel

Colleen Robbins, Christopher Brown, and Frances Kern dated October 23, 2023;

13.   the revised Financial Statement of Individual Defendant Roman Cresto signed on November 16, 2023; and

14.   the revised Financial Statement of Individual Defendant John Cresto signed on November 17, 2023.

H.   The suspension of the judgment will be lifted as to any Defendant or Relief Defendant if, upon motion by the Commission, the Court finds that Defendant or Relief Defendant failed to disclose any material Asset, materially misstated the value of any Asset, or made any other material misstatement or omission in the financial representations identified above.

I.   If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant or Relief Defendant in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payments previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## V.   ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDRED that:

A.   Defendants and Relief Defendant relinquish dominion and all legal and equitable right, title, and interest in all Assets transferred pursuant to this Order and may not seek the return of any Assets.

B.   The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the FTC, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.   The facts alleged in the Complaint establish all elements necessary to sustain an action by the FTC pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11

U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

      D.     Defendants and Relief Defendant acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants and Relief Defendant previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

      E.     All money paid to the Commission or Assets ultimately surrendered to the Commission pursuant to this Order (or any subsequent Court order issued in this matter) and further instructions from the Court may be deposited into a fund administered by the FTC or its designee on behalf of the FTC. This fund shall be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the FTC decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, any money not used for such equitable relief shall be deposited to the U.S. Treasury. Defendants and Relief Defendant have no right to challenge any actions the Commission or its representatives may take pursuant to this subsection.

      F.  The asset freeze imposed by the September 8, 2023 Preliminary Injunction Order (Docket No. 48) is modified to permit the payment and transfers identified in Section IV, Subsections B, C, and D above.  Upon completion of those payment and transfers, the asset freeze as to Defendants and Relief Defendant is dissolved.

## VI.      CUSTOMER INFORMATION

      IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, affiliate marketers, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from directly or indirectly:

A.     Failing to provide sufficient customer information to enable the FTC to efficiently administer consumer redress. Defendants represent that they have provided this redress information to the FTC. If a representative of the FTC requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the FTC, within 14 days.

B.     Benefiting from, using, selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any Person that any Defendant obtained prior to the entry of this Order in connection with any activity involving or related to the sale of any Business Opportunities or Business Coaching Programs; and

C.     Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the FTC.

Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, as required by any law, regulation, or court order.

## VII.     COOPERATION

IT IS FURTHER ORDERED that Defendants and Relief Defendant must fully cooperate with representatives of the FTC in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Defendants and Relief Defendant must provide truthful and complete information, evidence, and testimony. Individual Defendants must appear and Corporate Defendants and Relief Defendant must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that an FTC representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as an FTC representative may designate, without the service of a subpoena.

# VIII.    RECEIVERSHIP

IT IS FURTHER ORDERED that the Stapleton Group, Inc. is hereby appointed equity Receiver for the Receivership Entities for the purpose of taking the necessary steps to wind down the businesses of the Receivership Entities, liquidate Assets, and pay any net proceeds to the Commission to satisfy the monetary judgment in this Order. In carrying out these duties, the Receiver shall be the agent of this Court, shall be accountable directly to this Court, and is authorized and directed to:

A.    Take any and all steps that the Receiver concludes are appropriate to wind down the affairs of the Receivership Entities.

B.    Continue to exercise full control over the Receivership Entities and continue to collect, marshal, and take custody, control, and possession of all the funds, property, premises, accounts, Documents, mail, and other Assets of, or in the possession or under the control of the Receivership Entities, wherever situated, the income and profits therefrom, and all sums of money now or hereafter due or owing to the Receivership Entities.

C.    Continue to have full control over the management and personnel of the Receivership Entities.

D.    Take all steps necessary or advisable, including issuing subpoenas, to locate and liquidate all other Assets of the Receivership Entities, cancel the Receivership Entities' contracts, collect on amounts owed to the Receivership Entities, and take such other steps as may be necessary to wind-down the Receivership Entities efficiently.

E.    To the extent not already completed, the Receiver shall as soon as practicable after the entry of this Order, take exclusive custody, control, and possession of all Assets identified in Section IV.B of this Order.

F.    Sell the nonliquidated Assets of the Receivership Estate using commercially-reasonable procedure without further order of the Court.

G.    The Receiver shall give reasonable notice to the Commission of any settlements or compromises by the Receiver concerning the Receivership Estate, before

the settlement or compromise is consummated. Within 20 days of this notice, the FTC shall have the opportunity to object to any such settlement, by filing a motion with the Court.

H.      Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of the temporary restraining order in this action, except payments that the Receiver deems necessary or advisable to ensure Assets of the Receivership Entities are not lost, stolen, or dissipated.

I.      Institute actions or proceedings in state, federal, or foreign courts as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers.

J.      Defend any or all actions or proceedings instituted against the Receivership Entities, as the Receiver deems necessary and advisable to preserve the Assets of the Receivership Entities.

K.      Continue to maintain accurate records of all receipts and expenditures incurred as the Receiver.

L.      Perform all acts necessary or advisable to complete an accurate accounting of Assets of the Receivership Estate, and prevent unauthorized transfer, withdrawal, or misapplication of said Assets.

M.      Continue to be entitled to reasonable compensation for the performance of the Receiver's duties pursuant to this Order, including duties performed by the Receiver's agents, including accountants and lawyers, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets of the Receivership Estate, at the hourly rate

previously agreed to by the Receiver and used as the bases for prior fee applications approved by the Court.

## IX.     RECEIVER'S FINAL REPORT AND DISBURSEMENTS

IT IS FURTHER ORDERED that:

A.     No later than 180 days from the date of the entry of this Order, the Receiver shall file and serve on the parties a report (the "Final Report") to the Court that details the steps taken to dissolve the Receivership Estate. The Final Report must include an accounting of the Receivership Estate's finances and total Assets and a description of what other actions, if any, must be taken to wind down the Receivership.

B.     The Receiver shall mail copies of the Final Report to all known creditors of the Receivership Entities with a notice stating that any objections to paying any Assets of the Receivership Entities to satisfy the Receiver's costs and expenses and the monetary judgment set forth in this Order must be submitted to the Court and served by mail upon the Receiver and the parties within twenty-eight (28) days of the mailing of the Final Report.

C.     No later than fourteen (14) days after submission of the Final Report, the Receiver shall file an application for payment of compensation and expenses associated with his performance of his duties as Receiver.

D.     The Court will review the Final Report and any objections to the report and, absent a valid objection, will issue an order directing that the Receiver:

1.     Pay the reasonable costs and expenses of administering the Receivership, including compensation of the Receiver and the Receiver's personnel authorized by Section VIII of this Order or other orders of this Court and the actual out-of-pocket costs incurred by the Receiver in carrying out his duties;

2.     Pay all remaining funds to the Commission or its designated agent to reduce the monetary judgment in Section IV.

E.      With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a supplemental application. If the Receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve funds after the payment of fees and expenses approved by the Court in response to such a supplemental application, all funds in the reserve funds shall be immediately paid to the Commission or its designated agents.

F.      Any and all uncollected judgments obtained for the benefit of the Corporate Defendants shall be assigned to the Commission for further collection efforts.

## X. ORDER ACKNOWLEDGEMENTS

IT IS FURTHER ORDERED that Defendants and Relief Defendant obtain acknowledgments of receipt of this Order:

A.      Each Defendant and Relief Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 3 years after entry of this Order, Defendant Roman Cresto or Defendant John Cresto for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and Corporate Defendants Automators LLC, also d/b/a Automators AI and Ecom Skool, Empire Ecommerce LLC, Onyx Distribution LLC, and Stryder Holdings LLC must deliver a copy of this Order to:  (1) all principals, partners, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to Business Coaching Programs and Business Opportunities; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      For 3 years after entry of this Order, Defendant Andrew Chapman for any business that such Defendant, individually or collectively with any other Defendants, is

the majority owner or controls directly or indirectly, and Corporate Defendant Pelenea Ventures LLC must deliver a copy of this Order to:  (1) all principals, partners, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to Business Coaching Programs regarding how to manage or operate e-commerce stores or Business Opportunities involving the management or operation of e-commerce stores; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

D.     From each individual or entity to which a Defendant or Relief Defendant delivered a copy of this Order, that Defendant or Relief Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XI.     COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A.     One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.     Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the FTC may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this

Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the FTC.

2.    Additionally, each Individual Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.    For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by an FTC representative in writing, all submissions to the FTC pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin:  FTC v. Automators, et al., X230040.

## XII.     RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendants and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     Accounting records showing the revenues from all goods or services sold;

B.     Personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.     All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the FTC; and

E.    A copy of each unique advertisement or other marketing material.

## XIII.    COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any Assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the FTC, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce Documents for inspection and copying.  The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the FTC is authorized to communicate directly with each Defendant. Defendants must permit representatives of the FTC to interview any employee or other Person affiliated with any Defendant who has agreed to such an interview. The Person interviewed may have counsel present.

C.    The FTC may use all other lawful means, including posing, through their representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the FTC's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.    Upon written request from a representative of the FTC, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIV.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

SO ORDERED, this 26th day of February, 2024, at 3:09 p.m.

Hon. Dana M. Sabraw
United States District Judge

SO STIPULATED AND AGREED:

Dated: January 24, 2024

FOR PLAINTIFF:

FEDERAL TRADE COMMISSION

*Colleen Robbins*

Colleen Robbins
Christopher E. Brown
Frances L. Kern
Federal Trade Commission
600 Pennsylvania Ave, NW, CC8528
Washington, DC 20580
(202) 326-2548; crobbins@ftc.gov
(202) 326-2825; cbrown3@ftc.gov
(202) 326-2391; fkern@ftc.gov
(202) 326-3395 (fax)
(202) 326-3395 (fax)

FOR DEFENDANTS:

Douglas Litvack
Jenner & Block LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
202-637-6357
dlitvack@jenner.com

Kathleen M. Marcus
Jason De Bretteville
Lisa Northrup
Stradling Yocca Carlson & Rauth
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
949-725-4000
kmarcus@stradlinglaw.com

jdebretteville@stradlinglaw.com
lnorthrup@stradlinglaw.com

*Counsel for Defendants Pelenea Ventures LLC, Andrew Chapman and Relief Defendant, Peregrine Worldwide, LLC*

Michael Zweiback
Hannah E. Friedman
ZFZ Law LLP
315 W. 9th Street, Suite 1200
Los Angeles, CA 90015
213-266-5171
Michael.zweiback@zfzlaw.com
Hannah.friedman@zfzlaw.com

*Counsel for Defendants Roman Cresto and John Cresto*

Eliot Krieger
Maren B. Hufton
SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, CA 92647
949-523-3333
ekrieger@skt.law
mhufton@skt.law

*Counsel for Defendants Automators LLC and Stryder Holdings LLC*

Daniel Cohen

*Owner of Empire Ecommerce LLC and Onyx Distribution LLC*

jdebretteville@stradlinglaw.com
lnorthrup@stradlinglaw.com

*Counsel for Defendants Pelenea Ventures LLC, Andrew Chapman and Relief Defendant, Peregrine Worldwide, LLC*

---

Michael Zweiback
Hannah E. Friedman
ZFZ Law LLP
315 W. 9th Street, Suite 1200
Los Angeles, CA 90015
213-266-5171
Michael.zweiback@zfzlaw.com
Hannah.friedman@zfzlaw.com

*Counsel for Defendants Roman Cresto and John Cresto*

---

Eliot Krieger
Maren B. Hufton
SKT Law, P.C.
7755 Center Avenue, Suite 1225
Huntington Beach, CA 92647
949-523-3333
ekrieger@skt.law
mhufton@skt.law

*Counsel for Defendants Automators LLC and Stryder Holdings LLC*

---

Daniel Cohen

*Owner of Empire Ecommerce LLC and Onyx Distribution LLC*

s/ Diana L. Fitzgerald
Diana L. Fitzgerald
Fitzgerald & Isaacson, LLP
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
310-480-0090

*Counsel for Daniel Cohen and LCC Enterprises LLC*



_____
Roman Cresto, individually and as an officer and/or owner of Automators LLC and Stryder Holdings LLC


_____
John Cresto, individually and as officer and/or owner of Automators LLC and Stryder Holdings LLC


_____
Andrew Chapman, individually and as officer and/or owner of Automators LLC and Pelenea Ventures LLC

_____
Diana L. Fitzgerald
Fitzgerald & Isaacson, LLP
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
310-480-0090

*Counsel for Daniel Cohen and LCC Enterprises LLC*


_____
Roman Cresto, individually and as an officer and/or owner of Automators LLC and Stryder Holdings LLC


_____
John Cresto, individually and as officer and/or owner of Stryder Holdings LLC


_____
Andrew Chapman, individually and as officer and/or owner of Pelenea Ventures LLC